**UNITED STATES OF AMERICA, ex. rel. THE VIRGIN ISLANDS HOUSING AUTHORITY, Plaintiff/Relator**

**v.**

**COASTAL GENERAL CONSTRUCTION SERVICES CORPORATION, COASTAL FABRICATION CORPORATION, WILLIAM KOENIG, ESTHER KOENIG, LEONARD CHILDS, CARL KRUSE, ADVANCED INTERNATIONAL, INC., GREGORY C. BUDNICK, CORNISTONE, INC., and PETER FIRESTONE, Defendants**

Civ. No. 1994-189

District Court for the Virgin Islands

Division of St. Thomas and St. John

January 9, 2004

428

VINCENT FRAZER, ESQ., St. Thomas, U.S.V.I., *for Relator*

RICHARD VARTAIN, ESQ., Washington, D.C., *for Plaintiff*

WILLIAM, [sic] St. Thomas, U.S.V.I., *Defendant, Pro se*

ESTHER KOENIG, St. Thomas, U.S.V.I., *Defendant, Pro se*

MOORE, *District Judge*

## MEMORANDUM

## I. INTRODUCTION

On December 29, 1994, The Virgin Islands Housing Authority ["VIHA" or "plaintiff"] brought this *qui tam* action against the Coastal General Construction Services Corporation, corporation president William Koenig, corporation vice-president Esther Santiago Koenig and related parties pursuant to 31 U.S.C. § 3730(b)(1) of the False Claims Act, 31 U.S.C. § 3729-3733. The VIHA complaint alleged that the defendants produced and presented several false claims, statements and documents in violation of the False Claims Act. (VIHA Compl. P 1.) On July 5, 1995, the United States notified the Court that it was intervening and proceeding with the action pursuant to 31 U.S.C. § 3730(b)(2) and (4). On November 13, 1996, the United States filed its complaint.

The United States has moved for partial summary judgment against defendant William Koenig. Because the United States has established that his criminal conviction estops William Koenig from contesting the motion, I will enter partial summary judgment against William Koenig and assess a civil penalty of $50,000 against him.

## II. FACTUAL AND PROCEDURAL HISTORY

The United States alleges that the defendants submitted numerous false claims, statements and documents to the VIHA during two separate construction contract arbitrations involving the Donoe and Bovoni housing projects. (U.S. Compl. PP 1-32.) The United States Department of Housing and Urban Development ["HUD"] provides federal funds to VIHA, bringing the actions within the scope of the False Claims Act 31 U.S.C. § 3729-3733.[1] The complaint alleges that the defendants violated

---

[1] The annual subsidy from HUD represents ninety-nine percent of VIHA's operation budget, while its capital improvement program under which VIHA modernizes its public housing communities is one hundred percent funded by HUD. *United States v. William Koenig et al.,* Crim. No. 97-155 (Vol. I at 158) (D.V.I. 1997). Even though HUD never actually paid the false claims made during the Donoe arbitration, plaintiffs have still established a claim under the False Claims Act. *See* 31 U.S.C. § 3729(c) ("For purposes of this section, 'claim' includes any request or demand ... for money ... which is made to a ... recipient ... if the Government will reimburse such ... recipient for any portion of the money or property which is

the False Claims Act as follows: making false claims in violation of section 3729(a)(1) in Count I, making false statements in violation of section 3729(a)(2) in Count II, and conspiring to defraud the United States in violation of section 3729(a)(3) in Count III. (*Id.* at PP 33-44.) As relief on Counts I-III, the United States asks for treble damages, all penalties or costs allowed under the False Claims Act, and post-judgment interest. (*Id.* at 15.)

On November 13, 1997, a grand jury returned an indictment against William Koenig and Esther Koenig. Criminal Count I charged that William and Esther Koenig conspired to defraud VIHA and HUD through inflated claims made during the arbitration demanded by Coastal, in violation of 18 U.S.C. § 371. Counts II-XII were separate false statements submitted to the arbitrator, in violation of 18 U.S.C. § 1001. Counts XIII-XVII were individual mailings sent "for the purpose of executing and in furtherance of such scheme" in violation of 18 U.S.C. § 1341.

On April 22, 1998, William and Esther Koenig were convicted.[2] *See United States v. William Koenig, Esther Koenig, et al.,* Crim. No. 1997-155 (D.V.I.). Relying on these convictions, the United States moved for partial summary judgment against both William and Esther Koenig. The Koenigs appealed their convictions and the Third Circuit Court of Appeals affirmed William Koenig's conviction and vacated Esther Koenig's conviction. *United States v. William Koenig and Esther Santiago Koenig,* 2001 U.S. App. LEXIS 27986, No. 99-4073 and No. 99-4077, *bench op.* at 4, 5 (3d Cir. Dec. 4, 2001).

The United States has renewed its motion for partial summary judgment solely against William Koenig.[3] The United States argues that

---

requested or demanded."); *United States v. Killough,* 625 F. Supp. 1399 (M.D. Ala. 1986) (holding that a false claim submitted to a state housing program that was dependent on federal funding and requirements was sufficient under the False Claims Act).

[2] Count VI was dismissed against Esther Koenig.

[3] After the Koenigs appealed their convictions, this Court stayed any further proceedings. After the Court of Appeals affirmed William Koenig's conviction and reversed Esther Koenig's conviction, the United States asked this Court to lift the stay and "proceed to consider [the motion] in light of the court of appeals' judgments." (Pl.'s Mot. to Lift Stay at 1.) Since Esther Koenig's conviction was reversed,

William Koenig's criminal conviction collaterally estops the defendant from denying civil liability for submitting false statements and claims under sections 3729(a)(1) and (2) of the False Claims Act as well as under the common law. In addition, the United States urges the Court to assess the maximum civil penalty of $10,000 against William Koenig for *each* false record or statement used to support the false Donoe claim, rather than just one civil penalty for the whole Donoe arbitration. (*Id.* at 15.)

## III. DISCUSSION

### A. Motion for Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Sharpe v. West Indian Co.*, 118 F. Supp. 2d 646, 648 (D.V.I. 2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the nonmovant. *See Saldana v. Kmart Corp.*, 42 V.I. 358, 360-61, 84 F. Supp. 2d 629, 631-32 (D.V.I. 1999), *aff'd in part and rev'd in part*, 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant.

### B. William Koenig's Conviction Collaterally Estops him from Contesting the False Claims Cause of Action

#### 1. Statutory collateral estoppel

The United States correctly cites 31 U.S.C. § 3731(d) as estopping a defendant who is found guilty of fraud or false statements in federal court from denying the crime's "essential elements" in a False Claims Act action brought for the "same transaction." 31 U.S.C. § 3731(d). Therefore, because William Koenig was found guilty of knowingly and willfully making ten false statements during the Donoe arbitration in

summary judgment against her will not be considered and this Court proceeds to consider summary judgment against William Koenig.

violation of 18 U.S.C. § 1001, he is statutorily estopped from denying those same elements in this civil action. *See United States v. DiBona*, 614 F. Supp. 40, 41-42 (E.D. Pa. 1984) (finding that defendant's conviction under 18 U.S.C. § 1001 for false statements estopped him from denying liability under section 3729 of the False Claims Act).

William Koenig's conviction of the substantive false statement charges in Counts II-V and VII-XII have been affirmed on appeal and the following "essential elements" may be given collateral effect: during the 1992 Donoe project arbitration William Koenig knowingly and willfully made and caused to be made false, fictitious and fraudulent statements or representations concerning material facts within the jurisdiction of a department of the United States, namely, the Department of Housing and Urban Development, by claiming with supporting documents various costs that were not, in fact, direct costs of the Donoe project, each count in the criminal conviction constituting a separate fraudulent act.

### a. Civil False Claim Count I

██ ██ Count I of the civil complaint alleges that William Koenig, among others, knowingly violated section 3729(a)(1) of the False Claims Act with respect to both the Donoe and the Bovoni project. The False Claims Act imposes liability under this section on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). A jury found William Koenig guilty beyond a reasonable doubt of knowingly making false statements of material facts to HUD by documenting fictional costs for the Donoe project. This necessarily establishes civil liability by a preponderance of the evidence for knowingly presenting the same false claim for payment or approval to the United States under 3729(a)(1). Therefore, based on statutory collateral estoppel, summary judgment shall be entered against William Koenig on Count I for the Donoe project claims. Contrary to the defendant's assertions, "there is no constitutional impediment to a grant of summary judgment on the issue of liability in a False Claims action when summary judgment is based on facts established in a criminal conviction and incorporated into the civil suit." *United States v. Mickman*, 1993 U.S. Dist. LEXIS 18200, [WL *2] (E.D.

Pa.) (citing *United States v. Halper*, 490 U.S. 435, 438, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989)).

### b. Civil False Claim Count II

Count II alleges that William Koenig, among others, knowingly violated section 3729(a)(2) of the False Claims Act with respect to both the Donoe and the Bovoni project. (U.S. Compl., PP 37-40.) The False Claims Act broadens liability under this section to include any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved." 31 U.S.C. § 3729(a)(2). Although the United States concedes that HUD has never actually paid or approved the Donoe claim, it asserts that such approval or payment is not required for liability under subsection (a)(2).

Subsections 3729(a)(1) and (a)(2) of the False Claims Act had been combined in one section, 31 U.S.C. § 231, until Congress recodified the provisions in 1982. Section 231 provided:

> Any person ... who shall make or cause to be made, or present or cause to be presented, for payment or approval, to or by any person or officer in the civil ... service of the United States, any claim [(a)(1)] upon or against the Government of the United States, or any department or officer thereof, knowing such claim to be false, fictitious, or fraudulent, or who, for the purpose of obtaining or aiding to obtain the payment or approval of such claim [(a)(2)], makes, uses, or causes to be made or used, any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry [shall be liable etc.].

31 U.S.C. § 231 (1976 ed.) (emphasis added). Clearly, section 231 did not premise liability on actual payment or approval by the government. It required only that the document be used "for the purpose of obtaining or aiding to obtain" payment or approval. The 1982 recodification's purpose was to "restate in comprehensive form, without substantive change, certain general and permanent laws related to money and finance and to enact those laws as Title 31, United States Code. In the restatement, simple language has been substituted for awkward and obsolete terms ... ." H.R. REP. No. 651, 97th Cong., 2d Sess. 1, reprinted in 1982 U.S. CODE CONG. & ADMIN. NEWS 1895, 1895. Thus, the words

of 3729(a)—"to get a claim paid or approved" are the functional equivalent of the words previously used in section 231 "for the purpose of obtaining or aiding to obtain the payment or approval."

His criminal conviction established that William Koenig knowingly presented false records "to get a claim paid or approved," in the language of the current statute, or "for the purpose of obtaining or aiding to obtain the payment or approval" in the words of the previous provision. Therefore, summary judgment for the Donoe project allegations of Count II is also appropriate.

### 2. Common law collateral estoppel

█ The Third Circuit Court of Appeals has adopted the following test for collateral estoppel from the first Restatement of Judgments:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) *that issue must have been actually litigated*; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*Bower v. O'Hara*, 759 F.2d 1117, 1125 (3d Cir. 1985) (emphasis in the original).

█ I agree with the United States that both the civil and criminal cases involve the same issue: whether William Koenig knowingly committed ten fraudulent acts during arbitration of the Donoe claim. The issue was actually litigated in the criminal action where William Koenig had a full and fair opportunity to defend himself. The jury's judgment convicting William Koenig of all ten fraudulent acts and the subsequent affirmance on appeal make it a valid and final judgment. Finally, the jury's determination that William Koenig did, in fact, knowingly commit these ten fraudulent acts was clearly essential to the final judgment convicting him of violation of 18 U.S.C. § 1001. Therefore, even under the common law, William Koenig is estopped from denying civil liability. The Court will grant partial summary judgment on Counts I and II of the complaint on William Koenig's false claims regarding the Donoe project.

## C. Penalties of $5,000 on William Koenig for each of the ten false records he used to support the false Donoe claim

William Koenig is responsible for civil penalties or damages under the False Claims Act. Section 3729(a) provides that violators are "liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person." The purpose of this damage provision was to "make sure the Government would be made completely whole." *United States ex. rel Marcus v. Hess*, 317 U.S. 538, 551-52, 87 L. Ed. 443, 63 S. Ct. 379 (1943). Because HUD never paid the Donoe claim, there are no compensatory damages to triple. Civil penalties are still in order, however. *See Rex Trailer Co. v. United States*, 350 U.S. 148, 153-54, 100 L. Ed. 149, 76 S. Ct. 219 (1956); *see* also *United States v. Rohleder*, 157 F.2d 126 (3d Cir. 1946). The United States contends that each false record or statement used to support the false Donoe claim warrants a separate civil penalty of $10,000. Because William Koenig was convicted of ten such falsities, the United States asks for civil penalties of $100,000. The defendants respond that there was only one claim and not ten.

The Supreme Court has noted that "in cases involving prime contractors the number of individual *false payment demands* that the contractor has made upon the Government." *United States v. Bornstein*, 423 U.S. 303, 309 n.4, 46 L. Ed. 2d 514, 96 S. Ct. 523 (1976) (citations omitted) (emphasis added). The Court also pointed out that the number of penalties need not be limited to the number of contracts or false claims filed, but should be equal to the number of fraudulent acts the individual committed that caused false claims to be filed. *Id.* at 312. Following *Bornstein*, I view each of William Koenig's ten fraudulent subcontracting bills submitted to VIHA as a false payment demand upon the Government. Although only one claim, the Donoe arbitration, was filed against HUD, there were ten fraudulent acts that caused that claim to be false and for which I must assess separate, individual penalties.

While I must assess a civil penalty for each fraudulent act, I do have discretion to set the amount of each between $5,000 and $10,000. *See* S. REP. No. 99-345, at 8 (1986); S. REP. No. 96-615, at 2 (1981); *See also United States v. Lorenzo*, 768 F. Supp. 1127, 1133 (E.D. Pa. 1991); *see*

436

31 U.S.C. § 3729(a).[4] I can find no real guidance from the common law or legislative history in determining where, within the range of $50,000 to $100,000, I should set the penalty. *See* Michael Waldman, *"Damage Control": A Defendant's Approach to the Damage and Penalty Provisions of the False Claims Act*, 21 PUB. CONT. L.J. 131, 159 (1992). District courts in this Circuit have considered "fairness" when awarding the minimum civil penalties. *See United States v. Lorenzo*, 768 F. Supp. at 1133 (awarding the minimum because the civil penalties were disproportionately higher than actual damages to the government); *see also United States v. Bd. of Ed. of Union City*, 697 F. Supp. 167, 174 n.7 (D.N.J. 1988) (awarding the minimum civil penalty because defendant's acts were committed before the 1986 amendment increasing the penalty from $2,000 to between $5,000 and $10,000).

The United States has asked for the maximum civil penalty of $100,000 and cited the following factors: the defendant's bad faith inflation of costs right before arbitration, the public policy goal of deterring fraud against a public housing project, and defendant's numerous false statements supporting the false claim. In exercising the broad discretion Congress has given district courts in setting these civil penalties, I consider the totality of the circumstances, including the fact that the United States suffered no actual damages because HUD never paid the Donoe claim. Although I recognize that the government has incurred other expenses in detection, investigation and litigation and has a right to be made completely whole, the United States has not documented any of these costs.

I am also mindful that William Koenig has been punished by incarceration on his conviction in the collateral criminal matter. I sentenced him on November 10, 1999 to twenty-four months in prison followed by a three-year term of supervised release, but waived any fine, costs of imprisonment and supervision due to his inability to pay such costs. Balancing these factors, I find that the minimum civil penalty of $5,000 for each of his ten fraudulent acts is appropriate for Mr. Koenig.

---

[4] Congress has modified the Act since the *Bornstein* decision to define terms such as "knowingly" and "claim," but has not provided guidance on how the number of civil penalties should be calculated. *See* False Claims Act, Pub. L. No. 99-562, 100 Stat. 3153 (codified as amended 31 U.S.C. § 3729 (Supp. IV 1986)); S. REP. No. 99-345 at 1, *reprinted* in 1986 U.S.C.C.A.N. 5266, 5266.

VIHA, the relator in this *qui tam* action, is entitled to between 15% and 25% of the proceeds of this judgment "depending upon the extent to which [VIHA] substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d). I find that VIHA should receive the maximum of 25% because it was the original source of the information and also spent a great deal of time and resources detecting and investigating the fraud. *See United States ex. rel Thornton v. Science Applications Intern Corp.*, 79 F. Supp. 2d 655 (N.D. Tex. 1998). VIHA is also entitled to compensation for its reasonable expenses, including attorneys' fees. *See* 31 U.S.C. § 3730(d).

## IV. CONCLUSION

The final criminal judgment against William Koenig for fraud and false statements under 18 U.S.C. § 1001 estops the defendant from denying the essential elements of the claims in this civil proceeding. Accordingly, summary judgment will be entered against William Koenig on the Donoe claims asserted in Counts I and II. Based on William Koenig's submission of ten false records in the Donoe arbitration, I will access a civil penalty at $5,000 each, and award the United States judgment of $50,000 along with post-judgment interest, of which twenty-five percent will go to VIHA.